U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 NOV 30 PM 2:29

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 5:10-cr-14-01 |
| ) | |
| PEDRO MINOTTA-CARAVALLE ) | |

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**
(Doc. 21)

This matter came before the court on October 28, 2010 for oral argument on Defendant Pedro Minotta-Caravalle's Fed. R. Crim. P. 12(b)(2) motion to dismiss the indictment against him. The Defendant is charged with criminal reentry after removal, after having committed an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). The Defendant collaterally attacks his underlying removal order under 8 U.S.C. § 1326(d), arguing that it was unlawful due to certain procedural errors allegedly committed by the Immigration Judge (the "IJ") who conducted the removal proceeding. The Government opposes the motion.

The Government is represented by AUSA Timothy C. Doherty, Jr. Defendant is represented by Natasha Sen, Esq.

### I. Factual and Procedural Background.

On November 1, 1994, Defendant, a citizen of Venezuela and Colombia, entered the United States at New York City as a visitor with a B-2 visa which permitted him to remain in the United States for one year. He overstayed his visa and did not apply for admission to the United States.

### A. Defendant's 1999 Felony Conviction.

On April 5, 1999, the Defendant pled guilty in New York state court to criminal sale of a controlled substance (cocaine) in the third degree, in violation of New York Penal Law § 220.39-1, a Class "B" felony. On May 12, 1999, he was sentenced to a term of imprisonment of one to three years. The Defendant's anticipated release date was January 13, 2000, unless he did "not successfully complete the Shock Program," in which case his parole eligibility date would be March 28, 2000. (Doc. 25-3.) The Defendant's "max-out" date for this sentence was May 12, 2002.

### B. Defendant's 1999-2000 Removal Proceedings.

On May 6, 1999, the Defendant was served in person with a Notice to Appear ("NTA") at a removal proceeding before an IJ. The NTA alleges that the Defendant was an alien present in the United States who has not been admitted or paroled. It further alleges that the Defendant entered the United States on an unknown date, at an unknown place, and at a time or place other than as designated by the Attorney General. The NTA advised the Defendant of his right to be represented by counsel at his own expense, and provided information regarding the timing of the removal proceeding and how it would be conducted. It indicates that "[a]ttached is a list of organizations and attorneys which provide free legal services." (Doc. 25-1 at 2.) The NTA further stated:

> At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.
>
> You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

(Doc. 25-1 at 2.)

On September 7, 1999, the NTA was amended to include a charge that the Defendant had remained in the United States for a longer time than permitted. The amended NTA included the facts underpinning the amended charge.

On September 9, 1999, while serving his sentence at a New York state correctional facility, the Defendant appeared via videoconference before an IJ for a removal hearing. At the commencement of the hearing, the IJ advised the Defendant that on the table in front of the Defendant was a copy of his written appeal rights which explained how to appeal his case if he was ever ordered deported by an IJ. The IJ advised the Defendant to retain the piece of paper in case he ever needed it.

The IJ informed the Defendant that he was in court because the Government alleged that he entered the United States in 1994 on a one-year visa, that he did not leave on time, and that the Government sought to obtain Defendant's removal because he was not legally in the country. The IJ explained the Defendant's right to be represented by a lawyer at no expense to the Government. The IJ told the Defendant that he could either pay for an attorney or try to obtain one for free. The IJ explained that he did not have a list of free lawyers to offer the Defendant, and asked the Defendant if he wanted additional time to find a lawyer to represent him for free or to try to pay one. The Defendant answered in the affirmative. The IJ continued the hearing for two months to enable the Defendant to obtain a lawyer. The IJ advised the Defendant that a further continuance to obtain counsel would not be granted.

On November 4, 1999, the removal hearing resumed. Again, the Defendant appeared by videoconference from a New York state correctional facility. The IJ asked the Defendant about his efforts to find counsel. The Defendant informed the IJ that he had not hired an attorney because lawyers were "extremely expensive" and he did not have "any money" to pay for one. The Defendant stated that he "told my family to get me a lawyer and they said lawyers were too expensive." The IJ informed the Defendant that he would be representing himself, that he had a right to present and object to

evidence, to question any witnesses, and to appeal any final decision to the Board of Immigration Appeals (the "BIA").[1]

After placing the Defendant under oath, the IJ questioned him regarding the facts in the amended NTA. The Defendant admitted that he was not a United States citizen and that he was a citizen of Venezuela. The Defendant further admitted that he had entered the United States in 1994 as a nonimmigrant visitor, that he was permitted to stay for one year, and that he remained beyond the one year period without authorization. The Defendant further stated that he was twenty-one years old, single, and that his parents resided in the United States under a "residents" status.

Based upon the Defendant's admissions, the IJ found, by clear and convincing evidence, that the Defendant was inadmissible as an alien who had overstayed his visa. The IJ informed the Defendant that there was no legal way that he could remain in the United States because he did not have a spouse or parent who was a United States citizen who could file papers that might help him remain in the country. The IJ found the Defendant was removable. After questioning the Defendant regarding the country to which he wanted to return, the IJ ordered that the Defendant be removed to Venezuela. The IJ did not address whether the Defendant was eligible for voluntary departure.

The IJ asked the Defendant if he wanted to appeal the removal or make the decision final that day. The Defendant responded, "No thank you." The IJ then indicated on the record that the removal decision would be final that day and that all rights of appeal had been waived. The IJ's written order states that Defendant was "not eligible for relief from removal." (Doc. 21-2.)

The Defendant neither appealed to the BIA, moved to re-open his case, nor sought habeas corpus relief. On February 25, 2000, the Defendant was removed from the United States for the first time.[2]

---

[1] The IJ engaged in a conversation with the Government's lawyer regarding withdrawing the original charges in light of the amendment. This conversation was not translated.

[2] At some point thereafter, the Defendant re-entered the United States. In November 2008, he was convicted in Florida of three misdemeanors and sentenced to time served (approximately

4

### C. The Indictment.

On March 4, 2010, the grand jury returned a one-count indictment against the Defendant, alleging a violation of 8 U.S.C. § 1326(a) and (b)(2), for being an alien who was found in the United States after having been deported and removed on February 25, 2000 and on January 23, 2009, without the consent of the Attorney General to reapply for admission to the United States. The Indictment further alleges that the Defendant's deportations and removals were subsequent to his commission of an aggravated felony.

## II. Conclusions of Law and Analysis.

### A. The Requirements for a Collateral Attack on the Indictment.

The Defendant asserts that dismissal of the Indictment is warranted because "the Government cannot establish an essential element of its illegal reentry case against [the Defendant]." (Doc. 21 at 15.) This argument misstates the applicable burden of proof. "Under § 1326 of the INA [Immigration & Nationality Act], it is a crime for a deported or removed alien to enter, attempt to enter, or be found in the United States." *United States v. Scott*, 394 F.3d 111, 116 (2d Cir. 2005) (citing 8 U.S.C. § 1326(a)). "8 U.S.C. § 1326 does not require that the alien have been 'properly' or 'lawfully' deported." *United States v. Paredes-Batista*, 140 F.3d 367, 380 (2d Cir. 1998) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 834-35 & n.9 (1987) (noting that text, legislative history, and background of § 1326 indicate that Congress did not intend that the validity of the underlying deportation be contestable in a § 1326 prosecution)). Accordingly, "[t]he lawfulness of a deportation proceeding is not an element of the § 1326 illegal reentry offense." *Id.* Instead, the Defendant's collateral attack on the validity of the 1999 removal order is a *defense to prosecution* and the burden of proof is properly allocated *to the Defendant. See United States v. Copeland*, 376 F.3d 61, 66 (2d Cir. 2004) ("An alien can defend against such a charge by challenging the validity of the deportation order upon which the charge is predicated.").

---

thirty days). The Defendant was then transferred to the custody of immigration officials, his 1999 removal order was reinstated and, in January 2009, he was again removed to Venezuela. On or about February 21, 2010, he was allegedly found in the District of Vermont.

Congress has limited the circumstances in which a collateral attack is available as follows:

> In a criminal proceeding [for illegal reentry], an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "The requirements are conjunctive, and thus [a defendant] must establish all three in order to succeed in his challenge to his removal order." *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002).

The Defendant asserts that he has established all three prongs of § 1326(d); the Government contends that he has established none of them. The court addresses the requirement of fundamental unfairness first as it effectively renders the other two requirements for a collateral attack moot.

### B. Fundamental Unfairness Resulting in Prejudice.

The Defendant contends that the IJ's failure to inform him, at his 1999 removal hearing, "that he was eligible for voluntary departure, and the written order's statement that [Defendant] was not eligible for relief, constituted fundamental procedural error that was prejudicial." (Doc. 21 at 13.) The Government counters that the Defendant was statutorily ineligible for the discretionary relief of voluntary departure which effectively eviscerates the Defendant's due process claim.

"Although the Supreme Court has not specifically delineated the procedural safeguards to be accorded aliens in deportation or removal hearings, it is well settled that the procedures employed must satisfy due process." *Fernandez-Antonia*, 278 F.3d at 156 (citation omitted). "To establish fundamental unfairness under § 1326(d)(3), a defendant must show both a fundamental procedural error and prejudice resulting from that error." *Scott*, 394 F.3d at 117 (citation and internal quotation marks omitted). The Second

6

Circuit has acknowledged that a fundamental procedural error may occur "where an alien is erroneously denied information regarding the right to seek such [discretionary] relief, and the erroneous denial of that information results in a deportation that likely would have been avoided if the alien was properly informed . . . ." *Copeland*, 376 F.3d at 71.[3]

The Defendant is correct in asserting that the IJ had an affirmative duty to advise him of any potentially available discretionary relief. *See* 8 C.F.R. §1240.11(a)(2) (1998) ("The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing[.]"); *In re R-S-H*, 23 I. & N. Dec. 629, 644 (BIA 2003) ("[I]f the evidence of record does not indicate that an alien has been convicted of an aggravated felony or other applicable crime, the [IJ] has the duty to provide him or her with information about voluntary departure . . . before the pleadings are taken."); *In re Cordova*, 22 I. & N. Dec. 966, 970 (BIA 1999) ("An Immigration Judge has a duty to inform aliens of potential forms of relief for which they are apparently eligible, including voluntary departure."). At least one court in the Second Circuit has held that the failure to advise an alien of the availability of voluntary departure where such relief is apparently available constitutes fundamental unfairness.[4]

---

[3] *Copeland* acknowledged that circuits are split over "whether the failure to inform an alien of his right to seek discretionary relief can ever be a fundamental procedural error." *Copeland*, 376 F.3d at 70. The Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits have held that a failure to inform an alien of the availability of discretionary relief does not rise to the level of fundamental unfairness. In contrast, the *Copeland* court noted that the Ninth Circuit "has held that an IJ's failure properly to inform an alien facing removal of his right to seek discretionary relief may be fundamentally unfair." *Id.* at 71 (citing *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049 (9th Cir. 2004)); *see also United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004) (due process violated where IJ failed to inform alien of eligibility for voluntary departure).

[4] In *United States v. Garcia*, 2008 WL 3890167 (E.D.N.Y. Aug. 19, 2008), the district court held that an IJ's failure to inform an alien of his eligibility for voluntary departure relief constituted "a fundamental error in the deportation proceeding entitling the alien to collaterally attack his deportation order in a subsequent reentry prosecution under § 1326." *Id.* at *1.

However, there is *no authority* for the proposition that an IJ commits a fundamental procedural error when he or she fails to inform an alien of discretionary relief for which the alien is statutorily ineligible. In other words, as a condition precedent to his due process challenge, the Defendant must establish that the discretionary relief of pre-removal voluntary departure was potentially available to him. This he cannot do.

Although the record before the IJ was sparse, the IJ was aware that the Defendant was serving a sentence of incarceration in a New York state correctional facility and thus could not voluntarily depart immediately.[5] The IJ was also aware that the Defendant claimed to have no money and could not obtain financial assistance for a lawyer from his family. The IJ thus had reason to believe the Defendant would be ineligible for voluntary departure. This alone, however, would not have excused the IJ's failure to inform the Defendant of the availability of discretionary relief. Instead, the crux of this case is whether the Defendant was statutorily ineligible for voluntary departure due to his criminal record. This, in turn, requires the court to determine whether, as of the 1999 removal hearing, the Defendant had been convicted of an "aggravated felony." *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1229c(a), (b).

On April 5, 1999, the Defendant pled guilty and was convicted of violating New York Penal Law § 220.39-1, a Class B felony, for selling cocaine[6] for which he was

---

[5] Voluntary departure, which is a "discretionary form of relief" permitted for "certain favored aliens," *Dada v. Mukasey*, 128 S. Ct. 2307, 2312 (2008), required the Defendant to leave the United States no later than March 9, 2000. *See* 8 U.S.C. § 1229c(a)(2). Although the Defendant's anticipated release date from incarceration was January 12, 2000, his parole eligibility date was not until March 28, 2000, and his "max-out" date was May 12, 2002. Against this backdrop, it was arguably highly unlikely that an IJ would grant the Defendant permission to voluntarily depart.

[6] New York Penal Law § 220.39-1 provides that "[a] person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . a narcotic drug." Under New York law, a guilty plea "constitutes an effective judicial admission by a defendant that he committed the acts charged in the accusatory instrument . . . ." *People v. Lee*, 448 N.E.2d 1328, 1329 (N.Y. 1983). The accusatory instrument here provides that the Defendant and his co-defendant "each aiding the other, on or about September 3, 1998, in the County of Queens, knowingly and unlawfully sold a narcotic drug, to wit, cocaine, to a person known to the Grand Jury." (Doc. 25-2.)

8

sentenced to a one to three year term of imprisonment. An "aggravated felony" includes "illicit trafficking in a controlled substance" such as cocaine provided there is "the actual, constructive, or attempted transfer of a controlled substance . . ." 21 U.S.C. § 802(8), (11); 18 U.S.C. § 924(c); 8 U.S.C. § 1101(a)(43)(B). The Supreme Court has held that "a state offense constitutes a 'felony punishable under the Controlled Substance Act ["CSA"]' only if it proscribes conduct punishable as a felony under that federal law." *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006). "Thus, for a state drug offense to qualify as a 'drug trafficking crime' and, by extension, an aggravated felony, it must correspond to an offense that carries a maximum term of imprisonment exceeding one year under the CSA." *Martinez v. Mukasey*, 551 F.3d 113, 117-18 (2d Cir. 2008).

The Second Circuit has employed a "categorical approach" when deciding whether a state conviction fits within the definition of an "aggravated felony." *See id.* at 118. Pursuant to this approach, "'the singular circumstances of an individual petitioner's crimes should not be considered, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant[.]'" *Gertsenshteyn v. U.S. Dep't. of Justice*, 544 F.3d 137, 143 (2d Cir. 2008) (quoting *Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001)). Here, the Defendant's state court crime would have subjected him to federal prosecution under 21 U.S.C. § 841(a) for distribution of a controlled substance, a crime which is punishable by a term of imprisonment greater than one year. Numerous courts have concluded that a sale of cocaine in violation of N.Y. Penal Law 220.39-1 falls within the definition of an "aggravated felony" under the INA.[7] This court agrees.

---

[7] *See, e.g., Clarke v. Holder*, 2010 WL 2913047, at *1-*2 (5th Cir. July 27, 2010) (per curiam) (finding guilty plea for attempting to sell cocaine under N.Y. Penal Law § 220.39-1 is a drug trafficking crime under the CSA and an aggravated felony under the INA, and that defendant was not eligible for cancellation of removal); *Scotland v. Attorney Gen. of U.S.*, 342 F. App'x 851, 854 (3d Cir. 2009) (finding that conviction under N.Y. Penal Law § 220.39-1 constituted offense under CSA and an aggravated felony, and denying petition for review); *Manzueta v. Ashcroft*, 206 F. Supp. 2d 386, 388 (W.D.N.Y. 2002) ("Petitioner's conviction for selling cocaine, in violation of N.Y. Penal Law § 220.39, Criminal Sale of a Controlled Substance in the Third Degree, constitutes a drug trafficking crime with[in] the meaning of 18 U.S.C. § 924(c)" and qualifies as an aggravated felony); *Gutierrez v. Reno*, 2000 WL 1643585, at *4 (S.D.N.Y. Nov. 1, 2000) (finding guilty plea under N.Y. Penal Law § 220.39-1 for sale of crack cocaine qualifies

Because the Defendant cannot establish that the IJ failed to inform him of discretionary relief for which he was potentially eligible, he cannot establish fundamental unfairness. To hold otherwise simply because the IJ *was not aware* of the Defendant's statutory ineligibility for voluntary departure would exalt form over substance. Moreover, in such circumstances, a defendant could never establish the additional requirement of prejudice.

The Second Circuit has opined that "the appropriate test" for § 1326(d)(3) prejudice is the one used to decide ineffective assistance of counsel claims—*i.e.*, where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Copeland*, 376 F.3d at 73 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Accordingly, "in order to demonstrate prejudice an alien must show that his proceeding contained errors so fundamental that he might have been deported in error." *Id.* at 70 (internal quotation marks & citation omitted). Although the *Copeland* court concluded that a full evidentiary hearing is generally necessary to "determine whether there is a reasonable probability that the alien would have obtained [discretionary Section 212(c)] relief had he or she been informed of, and sought," *id.* at 74, such a hearing is not warranted where an alien is ineligible for the discretionary relief in question as a matter of law. In making this determination, the court may consider the Defendant's "entire criminal record at the time of his deportation," *id.*, and is not confined to the record before the IJ. *See United States v. Garcia-Gomez*, 2010 WL 2776079, at * 2-3 (D. Nev. July 14, 2010) (following Ninth Circuit's dictate that the defendant's entire criminal record should be considered and concluding that the defendant "was not actually eligible for voluntary departure so he could not be prejudiced by the immigration judge's failure" to advise him of the

---

as aggravated felony); *Leader v. Blackman*, 744 F. Supp. 500, 504-05 (S.D.N.Y. 1990) (holding that if defendant "was convicted under section 220.39 of New York's Penal Law [for attempted criminal sale of a controlled substance], he also could have been punished under the federal Controlled Substances Act" and offense was an aggravated felony); *see also United States v. Perez*, 131 F. App'x 333, 333-34 (2d Cir. 2005) (accepting, without holding, that conviction of criminal sale of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.30(1), is an aggravated felony within the meaning of 8 U.S.C. § 1326(b)(2)).

10

availability of such relief where evidence of the defendant's aggravated felony conviction was not before the IJ); *see also United States v. Pearce*, 2009 WL 4363419, at *10 (E.D.N.Y. Dec. 1, 2009) (stating that "[a]n alien's 'entire criminal record' at the time that he was ordered to be deported by an IJ is therefore relevant to a district court's evaluation of prejudice[.]").

Having been convicted of an "aggravated felony," the Defendant was statutorily ineligible for voluntary departure under § 1229(c). As a result, he could not be and was not prejudiced by the IJ's failure to inform him of the availability of voluntary departure because there was no probability that he would have been granted such relief. *See Fernandez-Antonia*, 278 F.3d at 160 ("[E]ven if the inadequacies in his removal proceeding amounted to fundamental procedural errors, [defendant] cannot show that those errors prejudiced him because he cannot make even a plausible showing that he might have been granted discretionary relief" based on his conviction for an aggravated felony). Accordingly, the Defendant cannot demonstrate, as he must, that but for the alleged procedural error, his 1999 removal would not have occurred. *See United States v. Calderon*, 391 F.3d 370, 376 (2d Cir. 2004). On this ground alone, the Defendant's motion to dismiss must be denied. The court thus only briefly addresses the Defendant's remaining arguments.

### C. Failure to Exhaust Judicial Remedies and Improper Denial of the Opportunity for Judicial Review.

The Defendant, who was self-represented before the IJ, argues that he should be excused from the requirement that he exhaust his administrative remedies and seek judicial review of the removal order because his waiver of his right to appeal was not knowing and intelligent. He further claims that his waiver of appeal was ambiguous, and that the IJ advised him of his right to appeal and obtained the Defendant's waiver thereof only after the IJ had ordered the Defendant to be removed. The Defendant further asserts that he was then effectively deprived of habeas corpus review due to the insufficient time between his removal order (November 4, 1999) and his actual removal (February 25, 2000) and the uncertainties of habeas relief.

11

Exhaustion under section 1326(d) "generally entails appealing the IJ's order of removal to the BIA." *United States v. Garcia*, 2008 WL 3890167, at *13 (E.D.N.Y. Aug. 19, 2008). "Statutory exhaustion requirements such as that set forth in § 1326(d) are 'mandatory, and courts are not free to dispense with them.'" *United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002) (quoting *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998)). The statutory exhaustion requirement, however, "must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." *United States v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004).[8]

Courts generally find a waiver is not knowing or intelligent where the IJ either failed to properly advise an alien of the right to appeal, or provided incorrect information regarding the availability of relief. *See, e.g., Sosa*, 387 F.3d at 136 (waiver of appeal invalid where IJ did not inform defendant of his eligibility to seek § 212(c) relief); *Calderon*, 391 F.3d at 375 (an alien's argument that he or she should be excused from statutory exhaustion requirements is "significantly bolster[ed]" where "[n]ot only was [the alien] not informed that he had an opportunity to apply for section 212(c) relief, he was explicitly told by the IJ and his counsel that he was barred from doing so.").

As to notice of the right to appeal, the Defendant here was notified orally and in writing of his right to appeal the removal order and was again reminded of the right to appeal after the IJ orally ordered that the Defendant be removed. The Defendant was thus fully informed of his right to appeal the removal order and a failure to exhaust his administrative remedies may not be excused on this basis.

In addition, because the IJ did not misinform or mislead the Defendant regarding the availability of voluntary departure, the Defendant's failure to exhaust his administrative remedies cannot be excused on that basis. The Defendant also fails to establish that he was improperly deprived of an opportunity for judicial review. "[T]he

---

[8] The Second Circuit imposes a similar standard for determining whether a defendant was improperly deprived of an opportunity for judicial review, requiring the defendant to establish that he or she did not knowingly waive the right to appeal, *Copeland*, 376 F.3d at 68 n.6, and that habeas review was not realistically available. *Id.* at 68-69.

availability of habeas to challenge deportation orders has long been recognized." *Gonzalez-Roque*, 301 F.3d at 50 (citations omitted). The Defendant neither sought habeas review, nor makes any cogent argument why the time constraints involved in his removal or other circumstances rendered it ineffective or uncertain.[9]

In summary, the Defendant cannot collaterally attack the validity of his 1999 removal order because he has not and cannot satisfy 8 U.S.C. § 1326(d). A more developed factual record will not alter this conclusion because whether the Defendant's state court felony conviction is an "aggravated felony" is a question of law which the court has decided in the affirmative. *Cf. United States v. Parker*, 2009 WL 311871, at *4 (D. Vt. Feb. 6, 2009) (deferring decision on whether defendant could collaterally attack his removal order because such a decision would require "a review of the evidence to determine whether Parker has a valid claim to citizenship and the likelihood that Parker would not have been removed but for the alleged errors in his removal.").

For the reasons stated above, the court hereby DENIES the Defendant's Motion to Dismiss the Indictment.

SO ORDERED.

    Dated at Burlington, in the District of Vermont, this 30th day of November, 2010.

                                    Christina Reiss
                                    United States District Court Judge

---

[9] The Second Circuit has rejected the argument that the uncertainty of habeas corpus relief in the wake of the passage of the Immigration Responsibility Act of 1996 excused an alien with an aggravated felony conviction from seeking habeas review. *See Gonzalez-Roque*, 301 F.3d at 50.

13